UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:15-cv-03481-CAS(JEMx) | Date | July 6, 2015 |
|---|---|---|---|
| Title | RAY LEWIS V. CITY OF LOS ANGELES | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Ray Lewis, Pro Se | Stacey Anthony |

**Proceedings:**     DEFENDANT'S MOTION TO DISMISS (Dkt. 8, filed June 1, 2015)

## I. INTRODUCTION

On May 8, 2015, *pro se* plaintiff Ray Lewis filed this action against his employer, the City of Los Angeles ("defendant" or "City"). Dkt. 1. In brief, plaintiff, an African American, alleges that the City has unlawfully limited his promotional opportunities on the basis of race.

Plaintiff's complaint alleges the following claims: (1) intentional race-based discrimination in employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"); (2) implementation of facially neutral employment practices that cause a disparate impact on African American employees, in violation of Title VII; (3) retaliation for plaintiff's complaints of race-based discrimination, in violation of Title VII; and (4) creation of a hostile work environment, in violation of Title VII. Compl. ¶¶ 101-145.[1] Plaintiff seeks injunctive relief, pursuant to 42 U.S.C. § 2000e-5(g), as well as compensatory and punitive damages, pursuant to 42 U.S.C. § 1981a. Id. ¶¶ 146-151.

On June 1, 2015, the City filed a motion to dismiss plaintiff's complaint. Dkt. 8. Plaintiff opposed the City's motion on June 12, 2015, dkts. 9, 10, and the City replied on

---

[1] Although plaintiff technically presents three claims, grouping his claims for "retaliation" and "hostile work environment" under a single heading, the Court construes these as two distinct claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:15-cv-03481-CAS(JEMx) | Date | July 6, 2015 |
|---|---|---|---|
| Title | RAY LEWIS V. CITY OF LOS ANGELES | | |

June 22, 2015, dkt. 13. The Court held a hearing on July 6, 2015. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

### A. Plaintiff's Employment History: 1997 - 2010

In August 1997, plaintiff Ray Lewis, an African American male, was hired by the City of Los Angeles as an entry-level electrician for the Port of Los Angeles. Compl. ¶ 9. In October 1999, plaintiff was promoted to Electrical Inspector for the Los Angeles Department of Building and Safety ("LADBS"). Id.

Between October 1999 and July 2003, plaintiff was assigned to the Inspection Bureau of LADBS as an entry level electrical inspector. Id. ¶ 12.[2] In early 2002, plaintiff conducted an interview with the General Manager of LADBS ("General Manager #1"), a Middle Eastern male, and the Chief of the Inspection Bureau ("Bureau Chief #1"), an African American female, to determine which management skills were important for success and promotion within LADBS. Id. ¶ 13.[3] Plaintiff also searched for City-sponsored management training programs, and was able to find a list of "core competencies" for management positions on the City's Personnel Department website. Id. ¶ 14. Plaintiff alleges that "these competencies . . . advertised for 'aspiring executives who wish to engage in self-directed personal development.' " Id. Accordingly, to improve his promotional prospects, plaintiff subsequently enrolled in courses to obtain a bachelor's degree in Vocational Education at California State University, Los Angeles ("CSULA") in early 2003. Id. ¶ 16.

---

[2] LADBS is composed of five bureaus: the Engineering, Inspection, Code Enforcement, Resource Management, and Technology Services. Compl. ¶ 10. The five Bureaus are under the purview of LADBS's Executive Officer, who in turn reports to LADBS's General Manager. Id.

[3] Throughout the complaint, plaintiff refers to other LADBS employees by job title—e.g.., "General Manager #1," "General Manager #2," and "Bureau Chief #2"—instead of using their names. The Court adopts plaintiff's terminology herein.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**         'O'

| Case No. | 2:15-cv-03481-CAS(JEMx) | Date | July 6, 2015 |
|---|---|---|---|
| Title | RAY LEWIS V. CITY OF LOS ANGELES | | |

In July 2003, plaintiff was assigned to the LADBS Code Enforcement Bureau ("CEB"). Id. ¶ 17. Between July 2003 and August 2005, plaintiff conducted code enforcement inspections and became proficient in several commercial and residential building codes. Id. Further, in June 2004, plaintiff completed his coursework at CSULA, obtaining a bachelor's degree in Vocational Education. Id. ¶ 18.

In August 2005, plaintiff was promoted to Senior Electrical Inspector within the LADBS Inspection Bureau. Id. ¶ 19. Between August 2005 and March 2008, plaintiff conducted over 6,000 field inspections and investigations in his capacity as a Senior Electrical Inspector. Id. In March 2008, at the urging of Electrical Inspection Section Chief #1, a White male, plaintiff accepted a volunteer assignment at the LADBS Electrical Code and Information Desk. Id. ¶ 20. Plaintiff served at the Electrical Code and Information Desk until June 2010. Id.

In late December 2009, General Manager #2, a White male, replaced General Manager #1, a Middle Eastern male, as the head of LADBS. Id. ¶ 21. Plaintiff alleges that in General Manager #2's introductory speech, he expressed a commitment to support the higher education goals of all staff. Id. In April 2010, General Manager #2 unveiled LADBS's Performance Enhancement Program ("PEP"), which sought "fiscal sustainability" and "a flexible workforce," while prioritizing employee training and workforce diversity. Id. ¶ 23. In light of LADBS' stated commitment to employee development, plaintiff renewed his higher education goals to include graduate degrees and certifications. Id. ¶ 24.

In June 2010, plaintiff met with Bureau Chief #1, an African American female, to discuss plaintiff's desire to promote to a management-level position. Id. ¶ 25. During this meeting, plaintiff received a transfer to the LADBS Resource Management Bureau's Training and Emergency Management Division ("TEMD"), to serve as an Electrical Training Officer. Id. Also around this time (mid-2010), plaintiff returned to CSULA to pursue a Master's degree in Industrial and Technical Studies ("ITS"). Id. ¶ 27.

B.    **Plaintiff's Employment History: 2011 to Present**

In late 2010 or early 2011, Bureau Chief #1 was replaced by Bureau Chief #2, a White male. Id. ¶ 28. Plaintiff spoke with Bureau Chief #2 and expressed his desire to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-03481-CAS(JEMx) | Date | July 6, 2015 |
| Title | RAY LEWIS V. CITY OF LOS ANGELES | | |

gain management experience; Bureau Chief #2, however, informed plaintiff that there were no training opportunities available. Id.

In January 2011, LADBS executives launched the "Senior Workshop" training program to improve the general supervision skills of Senior Inspectors, such as plaintiff. Id. ¶ 29. The following month, plaintiff circulated a "Train-the-Trainer" program guide to LADBS managers and executives, which plaintiff had developed for his ITS Master's thesis at CSULA. Id. ¶ 30. In March 2011, Bureau Chief #2 told plaintiff that work experience was more important than college degrees, and that the "Train-the-Trainer" program guide was poorly written and provided useless information. Id. ¶ 31. General Manager #3, an Asian male, reiterated most of Bureau Chief #2' opinions, but added that a degree in business or administration would have been more useful than plaintiff's Master's in ITS. Id. In response, plaintiff asked Bureau Chief #2 if he could participate in management training. Bureau Chief #2 denied plaintiff's request, claiming that there were no training opportunities available. Id. At this time, "Plaintiff was starting to believe that Bureau Chief #2's motivation for withholding management training opportunities was due to unconscious racism." Id.

In March 2011, plaintiff graduated from CSULA with his Master's in ITS. Id. ¶ 32. According to plaintiff, the CSULA Thesis Committee was "delighted with the 'Train-the-Trainer' project . . . and suggested that plaintiff develop it into a training manual for use by future students . . . ." Id. Following his graduation, plaintiff enrolled in the Master's of Science in Administration ("MSA") program at California State University, San Bernardino ("CSUSB"). Id. ¶ 33.

In September 2011, the Principal Inspector of TEMD, plaintiff's division, announced his retirement. Id. ¶ 34. Plaintiff asked Bureau Chief #2 whether he could assist with the managerial duties left unattended by the vacancy. Id. Bureau Chief #2 denied the request, stating that Senior Inspectors were not allowed to conduct managerial tasks. Id.

On October 5, 2011, the Principal Inspector Eligibility List ("2011 Principal Eligibility List"), which ranks employees for promotions over the next two years based on scores on a promotional exam, was published. Id. ¶ 35. Plaintiff met the official requirements for the Principal Inspector position, and achieved a score of 100 on the exam. Id. ¶¶ 35. Four employees—three White males and one Hispanic male—scored

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** 'O'

| Case No. | 2:15-cv-03481-CAS(JEMx) | Date | July 6, 2015 |
|---|---|---|---|
| Title | RAY LEWIS V. CITY OF LOS ANGELES | | |

higher than the plaintiff. Id.³ The only woman on the list, who was also African American, scored 95. Id.

    In mid-October 2011, Bureau Chief #2 circulated a memorandum containing Measures of Effectiveness ("MOE"), which set guidelines for staff evaluations. Id. ¶ 37. Plaintiff claims that, as the only Senior Inspector in TEMD, he was in charge of evaluating five TEMD entry-level inspectors. Id. As such, plaintiff asked Bureau Chief #2 for permission to formulate new evaluation guidelines, since the existing MOE guidelines did not match these inspectors' job responsibilities. Id. Plaintiff alleges that, on the day following his request, Bureau Chief #2 directed TEMD management staff to prohibit plaintiff from assisting with any TEMD managerial duties. Id.

    In late-October 2011, plaintiff complained to Bureau Chief #2 about his apparent unwillingness to provide plaintiff with management training opportunities. Id. ¶ 38 Bureau Chief #2 responded that plaintiff's training requests were ignored because they were not in writing and did not identify an available training program or temporary position. Id.

    In mid-November 2011, based on the 2011 Principal Eligibility List, LADBS conducted interviews for promotion to Principal Inspector positions. Id. ¶ 39. Two white males with scores of 103 and 101 on the exam—higher than plaintiff's score of 100—were promoted to "acting" Principals. Plaintiff believes that neither of these employees has a college degree. Id.

    In mid-December 2011, John Doe #4, a white male who scored 103 on the 2011 Principal Eligibility List, was promoted to TEMD Principal Inspector. Id. ¶ 40. Plaintiff believes that John Doe #4 has a college degree and had experience as a Senior Inspector in the Residential Inspection Section. Id. Still, plaintiff contends that he was more qualified than Doe #4 because plaintiff possessed a graduate degree, enrolled in courses to achieve a second graduate degree, held several building certifications, and had experience as a training officer in TEMD. Id.

---

    ³ A total of 115 employees from plaintiff's work group qualified to take the exam, and 59 total test-takers earned "passing" scores, ranging from 76 to 103. Id. ¶ 36.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:15-cv-03481-CAS(JEMx) | Date | July 6, 2015 |
|---|---|---|---|
| Title | RAY LEWIS V. CITY OF LOS ANGELES | | |

Following the December 2011 promotion of Doe #4, plaintiff informed Bureau Chief #2 that he was concerned about possible unconscious racial bias influencing promotion decisions. Id. ¶ 42. Noting his educational achievements and other qualifications, plaintiff asked why Doe #4 had been promoted instead of plaintiff. Id. Bureau Chief #2 responded that plaintiff's college degrees were irrelevant, since Doe #4 had obtained "special management" experience and General Manager #3, an Asian male, had approved the promotion. Id. Bureau Chief #2 then suggested that plaintiff obtain more job-related qualifications, be more cooperative, and not question management. Id.

Throughout January and February 2012, plaintiff made several requests to gain management experience in TEMD, but Bureau Chief #2 continued to deny them. Id. ¶ 46. Nonetheless, plaintiff alleges that, throughout 2012 and 2013, LADBS allowed two lower-scoring, White, male employees—one allegedly failed the promotional exam and the other scored 89—to serve as temporary "acting" Principal Inspectors—management positions—for the duration of the two-year, 2011 Principal Eligibility List period. Compl. ¶ 45.

In March 2012, plaintiff transferred from TEMD to the Commercial Electrical Inspection Section to serve as field inspector with supervisory duties over two inspection staff members. Id. ¶ 47. On April 16, 2012, a Chief Inspector Eligibility List ("2012 Chief Eligibility List") was formed to award promotions over the following two years. Id. ¶ 48. Plaintiff met the minimum requirements for the Chief Inspector position, but scored 89 on the relevant promotional exam, which was too low to be promoted. Id. ¶ 49. Plaintiff alleges that his failure to gain promotions and management training influenced his lower score. Id.

In mid-April 2012, plaintiff composed a written discrimination complaint, alleging that, LADBS discriminated on the basis of race by promoting a lesser qualified employee from the 2011 Principal Eligibility List. Id. ¶ 52. Plaintiff submitted the complaint to Electrical Section Chief #1, a White male, who advised plaintiff to withhold the complaint until the 2011 Principal Eligibility List expired because "possible retaliation would adversely affect plaintiff's future promotional opportunities." Id. Plaintiff subsequently destroyed the written complaint. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'

| Case No. | 2:15-cv-03481-CAS(JEMx) | Date | July 6, 2015 |
|---|---|---|---|
| Title | RAY LEWIS V. CITY OF LOS ANGELES | | |

In May 2012, two White males were promoted to Chief Inspector from the 2012 Chief Eligibility List, including Doe #4. Id. ¶ 53. Plaintiff asked Bureau Chief #2 why Doe #4 had been promoted so quickly. Id. ¶ 54. Bureau Chief #2 replied, as he had in 2011, that Doe #4 had performed well in "special assignments" for General Manager #3. Id. Plaintiff then asked Bureau Chief #2 whether the vacant TEMD Principal Inspector position, which previously belonged to Doe #4, would be filled. Id. Bureau Chief #2 told plaintiff that the City Council had eliminated that position. Id. Plaintiff alleges that the elimination of the TEMD Principal Inspector position was a form of retaliation for plaintiff's ongoing complaints of discrimination, and was intended to reduce plaintiff's promotional opportunities. Id. In the summer of 2012, Bureau Chief #2 again stressed that college degrees do not provide any real value for promotional purposes. Id. ¶ 55.

In mid-November 2012, plaintiff received his MSA degree from CSUSB. Id. ¶ 57. Also around this time, LADBS held interviews to promote more employees from the 2011 Principal Eligibility List. Id. ¶ 58. Three White males and one Hispanic male were promoted, all of whom scored lower than 100, the score achieved by plaintiff. Id. Plaintiff believes that none of these employees had college degrees. Id.

On or about December 3, 2012, plaintiff met with the LADBS in-house EEOC representative to discuss the results of an informal investigation into race-based discrimination that plaintiff had requested a few weeks earlier. Id. ¶ 59. The EEOC representative told plaintiff that there was no evidence of unlawful discrimination at LADBS; plaintiff, however, believes the EEOC representative reached this conclusion because he was intimidated by LADBS executives. Id.

On December 5, 2012, plaintiff met with Bureau Chief #2 and General Manager #3 to discuss plaintiff's frustration over perceived racial discrimination in LADBS' promotional process. Id. ¶ 60. Bureau Chief #2 and General Manager #3 reassured plaintiff that the promotional process did not discriminate based on race. Id. ¶ 64.

Nearly a year later, on October 9, 2013, plaintiff completed interviews for a potential promotion to Principal Inspector. Id. ¶ 68. According to plaintiff, most LADBS personnel were unaware that promotional interviews were even taking place until the week prior. Id. Ultimately, an African American female, who had previously scored 95 on the 2011 Principal Eligibility List exam, received the promotion to Principal Inspector

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:15-cv-03481-CAS(JEMx) | Date | July 6, 2015 |
|---|---|---|---|
| Title | RAY LEWIS V. CITY OF LOS ANGELES | | |

in the Residential Inspection Division.  Id.  Plaintiff alleges that, a few days before interviews were held, Bureau Chief #3, a White male, intentionally misled applicants by announcing that the open position was in the Code Enforcement Bureau, rather than in the Residential Inspection Division of the Inspection Bureau, allegedly to discourage applicants from challenging the pre-planned promotion of the African American female to the Residential Inspection position.  Id.

In October 2013, the 2011 Principal Eligibility List expired, and plaintiff's 100 score was no longer valid for promotions.  Id. ¶ 71.  Also around this time, plaintiff once again met with General Manager #3 to discuss his concerns regarding unfair race-based treatment.  Id. ¶ 72.  General Manager #3 dismissed plaintiff's concerns, stating that plaintiff simply lacked the qualifications for a promotion.  Id.

On or about November 29, 2013, plaintiff filed a formal race-based discrimination complaint with the California Department of Fair Employment and Housing ("DFEH"). Id. ¶ 73.  In December 2013, Electrical Section Chief #1, a White male, offered plaintiff the opportunity to gain management training as a volunteer office supervisor for the Electrical Section of the West Los Angeles LADBS office.  Id. ¶ 75.  Plaintiff accepted, and currently holds, this position.  Id.  In February 2014, plaintiff met with Electrical Section Chief #1 to discuss plaintiff's future management development plans.  Id. ¶ 76.

In March 2014, DFEH asked plaintiff if he was interested in conciliation efforts. Id. ¶ 77.  According to plaintiff, no efforts at conciliation were made because of defendant's unwillingness to participate.  Id.

In August 2014, plaintiff had a casual encounter with Bureau Chief #2 and attempted to provide him with plaintiff's updated resume, which Bureau Chief #2 rejected.  Id. ¶ 80.  In October 2014, plaintiff again applied for Principal and Chief Inspector promotions.  Id. ¶ 81.  By this time, plaintiff had accumulated approximately 30 certifications related to building inspections.  Id. ¶ 82.  However, plaintiff decided not to take the test for Principal Inspector because of severe stress and anxiety caused by memories of disparate treatment in the previous promotion cycle.  In December 2014, plaintiff received a "right to sue" letter from DFEH.  Id. ¶ 83.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:15-cv-03481-CAS(JEMx) | Date | July 6, 2015 |
|---|---|---|---|
| Title | RAY LEWIS V. CITY OF LOS ANGELES | | |

      In January 2015, Bureau Chief #2 announced his retirement. Id. ¶ 87. Later that month, plaintiff sent a claim for damages to the Office of the City Clerk, citing Title VII employment discrimination violations, which the City Attorney denied in February 2015. Id. ¶ 86. Also in February 2015, the EEOC sent plaintiff a Form 161 "Dismissal and Notice of Rights." Id. ¶ 89.

      In late January 2015, plaintiff scored 101 on the Chief Inspector promotional exam—tying with another employee for the top score on the 2015 Chief Inspector Eligibility List ("2015 Chief Eligibility List"). Id. ¶¶ 87-88, 90. On March 12, 2015, LADBS conducted interviews for the Chief Inspector position, which resulted in the promotion of one Hispanic male and one White male. Id. ¶ 91. Although plaintiff remained hopeful that he would be promoted to Chief Electrical Inspector based on his 2015 Chief Eligibility List score, LADBS managers informed him that they had decided not to permanently fill the Chief Electrical Inspector position. Id. Instead, on March 20, 2015, the Electrical Section Principal Inspector—a white male who had only recently expressed an interest in the Chief Electrical Inspector position and had scored 92 on the 2015 Chief Eligibility List—was promoted to "acting" Chief Electrical Inspector. Id. ¶¶ 92-93. Plaintiff alleges that he was more qualified than the current "acting" Chief Electrical Inspector in light of, inter alia, plaintiff's various building certifications, degrees, and higher score on the 2015 Chief Eligibility List. Plaintiff also alleges that, around that time, a union representative informed plaintiff that he would never get promoted because "they hate you." Id. ¶ 94.

## III. LEGAL STANDARD

      A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under Rule 12(b)(6), a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.' " Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-03481-CAS(JEMx) | Date | July 6, 2015 |
| Title | RAY LEWIS V. CITY OF LOS ANGELES | | |

do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). However, "[i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (citing Twombly and Iqbal); Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:15-cv-03481-CAS(JEMx) | Date | July 6, 2015 |
|---|---|---|---|
| Title | RAY LEWIS V. CITY OF LOS ANGELES | | |

## IV. DISCUSSION

The City contends that plaintiff's entire complaint must be dismissed for two primary reasons. First, the City asserts that the action is time barred, because plaintiff's underlying DFEH complaint was not timely filed. Mot. Dismiss at 8-11; Reply at 1-4. Second, the City argues that plaintiff's allegations are conclusory, and thus fail to state a cognizable claim. Mot. Dismiss at 4-8; Reply at 4-5.

Additionally, the City contends that plaintiff has failed to perfect the allegations of discrimination in his complaint that postdate the November 29, 2013 filing of his DFEH complaint, Reply at 5-6, and that punitive damages are unavailable as a matter of law, Mot. Dismiss at 11.

### A. Whether Plaintiff's Claims are Time Barred

Plaintiff brings four claims for violation of Title VII. Title VII requires an employee to file a charge with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred," or within three hundred days if "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice." 42 U.S.C. § 2000e-5(e)(1). "A claim is time barred if it is not filed within these time limits." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002). In the Ninth Circuit, the filing of a charge with the DFEH is "deemed to be a filing" with the EEOC, and vice versa. Paige v. State of Cal., 102 F.3d 1035, 1041 (9th Cir. 1996).

However, "the Title VII statute of limitations is not a jurisdictional requirement; it may be waived, and equitably tolled." Sloan v. West, 140 F.3d 1255, 1262 (9th Cir. 1998) (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394 (1983)). However, the equitable tolling doctrine has been applied "sparingly; for example, . . . when the statute of limitations was not complied with because of defective pleadings, when a claimant was tricked by an adversary into letting a deadline expire, and when the EEOC's notice of the statutory period was clearly inadequate." Scholar v. Pac. Bell, 963 F.2d 264, 267-68 (9th Cir. 1992) (citing Irwin v. Veterans Admin, 498 U.S. 89, 111 (1990) and Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 151 (1984) (per curium)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:15-cv-03481-CAS(JEMx) | Date | July 6, 2015 |
|---|---|---|---|
| Title | RAY LEWIS V. CITY OF LOS ANGELES | | |

Equitable tolling does "not extend to . . . a garden variety claim of excusable neglect." Id. (citing Irwin, 498 U.S. at 96).

      The City contends that plaintiff's claims are limited to discriminatory actions occurring within the 300 day period preceding plaintiff's November 29, 2013 DFEH complaint—i.e., events occurring between approximately February 2013 and November 2013. Reply at 3-4. As the City points out, the only adverse employment practice alleged by plaintiff that occurred in this time period was the promotion of another African American, which, on its face, is not discriminatory. Mot. Dismiss at 10.

      The City further contends that plaintiff was aware of the alleged discrimination as early as April 2012, when plaintiff composed a written discrimination complaint, but decided not to submit it. Mot. Dismiss at 10. In its reply briefing, the City asserts that plaintiff was aware of the alleged discrimination as early as December 2011, when plaintiff informed Bureau Chief #2 of his belief that there was discrimination in the promotion process. Reply at 3. The City thus argues that plaintiff was required to file his DFEH complaint within 300 days of December 2011—or approximately October 2012.

      On the current record, the Court cannot conclude, as a matter of law, that plaintiff's action is time barred. Although the City correctly points out that plaintiff composed, but declined to submit, a formal discrimination complaint in April 2012, the City neglects to mention plaintiff's allegation that Electrical Section Chief #1 advised him to withhold the complaint until the 2011 Principal Eligibility List expired in 2013 to avoid "possible retaliation [that] would adversely affect plaintiff's future promotional opportunities." Compl. ¶ 52. Construing the complaint in the light most favorable to plaintiff, such an allegation could support the conclusion that plaintiff "was tricked by an adversary into letting a deadline expire," Scholar, 963 F.2d at 267-68.[4] Moreover, had plaintiff filed a formal DFEH or EEOC complaint in April 2012, claims predicated on allegedly discriminatory employment practices occurring as early as July 2011—300 days prior—would not be time barred. Accordingly, the Court declines to dismiss plaintiff's complaint on this basis.

---

      [4] Further, plaintiff expressly alleges that he delayed filing a DFEH complaint because he was consistently informed by management that "[f]iling formal complaints would lead to retaliation." See, e.g., Compl. ¶ 66.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**    'O'

| Case No. | 2:15-cv-03481-CAS(JEMx) | Date | July 6, 2015 |
|---|---|---|---|
| Title | RAY LEWIS V. CITY OF LOS ANGELES | | |

Relatedly, the City contends that allegations of discriminatory failures to promote that postdate plaintiff's November 29, 2013 DFEH complaint are not "perfected,"—i.e., are not administratively exhausted—and thus cannot provide a basis for the imposition of liability against the City. Mot. Dismiss at 11. The City is correct that administrative exhaustion, through the timely filing of a complaint with the EEOC or DFEH, is a prerequisite to a court's exercise of jurisdiction over claims for violation of Title VII. Lyons v. England, 307 F.3d 1092, 1103 (9th Cir. 2002).

However, even where incidents of discrimination are not included an EEOC or DFEH complaint, a court may nonetheless exercise jurisdiction over such incidents where "the new claims are like or reasonably related to the allegations contained in the EEOC charge." Green v. Los Angeles County Superintendent of Sch., 883 F.2d 1472, 1475-76 (9th Cir. 1989) (internal quotation marks omitted). See also Anderson v. Reno, 190 F.3d 930, 938 (9th Cir. 1999) ) ("[F]orcing an employee to begin the administrative process anew after additional occurrences of discrimination in order to have them considered by the agency and the courts would erect a needless procedural barrier") (internal quotation marks omitted), overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). New claims are reasonably related to allegations contained in an EEOC or DFEH complaint where they fall "within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination." E.E.O.C. v. Farmer Bros. Co., 31 F.3d 891, 899 (9th Cir. 1994) (internal quotation marks and citation omitted) (emphasis in original). On this record—which, notably, does not contain plaintiff's DFEH complaint—the Court cannot conclude, as a matter of law, that plaintiff's allegations of discrimination in 2014 and 2015 are not "reasonably related" to the allegations contained in plaintiff's DFEH complaint. The Court thus declines to dismiss plaintiff's claims, insofar as they are predicated on allegations that postdate the November 29, 2013 DFEH complaint.

### B. Whether Plaintiff Has Failed to State a Claim

As a preliminary matter, the City contends that plaintiff's claims must be dismissed because he "fails to name a single City employee," instead referring to employees by their job classifications. Mot. Dismiss at 5. In opposition, plaintiff explains that he provided these names to opposing counsel on May 29, 2015, during an in-person meeting, and did not include the names in his complaint to "attempt to reduce the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-03481-CAS(JEMx) | Date | July 6, 2015 |
| Title | RAY LEWIS V. CITY OF LOS ANGELES | | |

possibility of scandalous character attacks by the press." Opp'n at 4. For the reasons discussed below, plaintiff will be granted leave to amend his original complaint. In so doing, plaintiff is instructed to identify City employees by name.

> **1.     Disparate Treatment**

Plaintiff asserts a claim for disparate treatment, citing 42 U.S.C. §2000e-2(a)(1), § 2000e-2(a)(2), and § 2000e-2(l). Specifically, plaintiff alleges that the City:

> [C]aused and/or permitted race-based intentional discrimination by . . . [1] Failing or refusing to promote plaintiff during promotion of eleven Principal Inspectors and six chief inspectors, in favor of White employees . . . [2] Providing management training opportunities designated as "special assignments" for White employees, . . . while limiting and preventing plaintiff from participating in similar management training opportunities . . . [3] Providing "acting pay" and temporary management assignments to White employees only; then exploiting said "acting pay" and temporary management assignment categories to create artificial barriers which limited and prevented plaintiff's access to promotional opportunities . . . [and] [4] Misfeasance and manipulation of in-house subjective interview processes to favor White employees and diminish plaintiff's greater job qualifications[.]

Compl. ¶ 103. Without distinguishing between plaintiff's various claims, the City contends that plaintiff's allegations are "conclusory" and do not provide "any factual content which would allow this Court to draw a reasonable inference that Defendant is liable for any misconduct alleged." Mot. Dismiss at 5.

To establish a Title VII violation for discrimination based on disparate treatment, an employee must show that (1) he belongs to a protected class, (2) he was qualified for his desired position, (3) he was subject to an adverse employment action, and (4) similarly situated individuals outside his protected class were treated more favorably. McDonnel Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008). A plaintiff is not required to plead a prima facie case of discrimination; however, he must plead enough facts to give the defendants fair notice of the claim and the grounds upon which it rests. Swierkiewicz v. Sorema N.A.,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-03481-CAS(JEMx) | Date | July 6, 2015 |
| Title | RAY LEWIS V. CITY OF LOS ANGELES | | |

534 U.S. 506, 511-12 (2002); see also Johnson v. Riverside Healthcare System, LP, 534 F.3d 1116, 1122 (9th Cir. 2008).

The Court concludes that plaintiff has alleged a cognizable claim for disparate treatment. Plaintiff has alleged that he is African American, that he was qualified for the various promotions for which he was passed over, that he suffered adverse employment actions, Hardin v. Wal-Mart Stores, 2015 WL 1222412, at *1 (9th Cir. Mar. 18, 2015) ("[F]ailure to promote is a classic example of an adverse employment action[.]"), and that white employees were treated more favorably than him. Although the City characterizes plaintiff's complaint and "rambling" and "unclear," the City is plainly on notice of the nature of plaintiff's disparate treatment claim. Accordingly, the Court DENIES the City's motion to dismiss this claim.

        2.        **Disparate Impact**

Plaintiff also asserts a claim for disparate impact, citing 42 U.S.C. § 2000e-2(k)(1)(A). Plaintiff alleges that the City allowed "LADBS managers to misuse, manipulate, and exploit peculiar but unintentionally discriminatory employment 'patterns or practices' . . . caus[ing] . . . a Title VII disparate impact violation upon plaintiff who is a Black male promotional candidate." Compl. ¶ 108. In particular, plaintiff alleges that the following practices caused a disparate impact: "[1] Limiting or depriving plaintiff of access to 'special assignments' . . . [2] [m]anipulating [the] in-house subjective interview processes . . . [and] [3][e]xploiting temporary assignments which included 'acting pay,' for the significant benefit of white candidates only[.]" Id. ¶ 109. Again, the City attacks plaintiff's allegations as vague and conclusory. Mot. Dismiss at 6.

A *prima facie* case of discrimination based on disparate impact requires that plaintiff allege (1) a significant disparate impact on a protected class, (2) specific employment practices or selection criteria, and (3) a causal relationship between the identified practices and the impact. Donoghue v. Orange County, 848 F.2d 926, 932 (9th Cir. 1987). Although plaintiff has identified various, specific employment practices which he alleges caused a disparate impact, he has only alleged that these practices cuased a disparate impact on *plaintiff*. While plaintiff, an African American, is undoubtedly a member of a protected class, he has not alleged facts indicating that the practices complained of caused a disparate impact on *other* LADBS employees falling

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-03481-CAS(JEMx) | Date | July 6, 2015 |
| Title | RAY LEWIS V. CITY OF LOS ANGELES | | |

within his protected class. As such, as currently pleaded, plaintiff has not stated a claim for disparate impact. Accordingly, the Court GRANTS without prejudice the City's motion to dismiss plaintiff's disparate impact claim.

### 3.  Retaliation

Plaintiff next asserts a claim for retaliation, citing 42 U.S.C. § 2000e-2(a)(1), § 2000e-2(a)(2), and §2000e-3(a). The gravamen of plaintiff's retaliation claim is that, due to his various, informal complaints of racial discrimination, plaintiff was retaliated against by consistently being denied promotional opportunities, despite his qualifications.

More specifically, plaintiff appears to allege that, in retaliation for complaining of possible discrimination to Bureau Chief #2 in December 2011, the City "continued to deny plaintiff access to management training activities" in January and February 2012, Compl. ¶ 123, eliminated the TEMD Principal Inspector position in May 2012, id. ¶ 127, and denied plaintiff other promotions in November 2012, id. ¶ 128. Plaintiff further alleges that, in retaliation for his complaints of race-based discrimination to Bureau Chief #2 and Bureau Chief #3 in December 2012, he was passed over for promotion in October 2013. Id. ¶¶ 130-132. Once again, the City contends that plaintiff's allegations are too vague and conclusory to withstand a motion to dismiss. See Mot. Dismiss at 4-7.

To state a *prima facie* case of retaliation under Title VII, a plaintiff must allege that (1) he engaged in activity protected under Title VII, (2) the employer subjected him to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action. Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493, 506 (9th Cir. 2000). Plaintiff has satisfied these requirements here. Plaintiff alleges that he engaged in protected activity by lodging informal complaints of discrimination, id. ("informal complaints . . . constitute a protected activity"), and likewise alleges that, as a result, he was denied both promotions and training opportunities that inform promotional decisions, see Hardin, 2015 WL 1222412, at *1. Accordingly, the Court DENIES the City's motion to dismiss plaintiff's retaliation claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-03481-CAS(JEMx) | Date | July 6, 2015 |
| Title | RAY LEWIS V. CITY OF LOS ANGELES | | |

### 4. Hostile Work Environment

Plaintiff asserts a claim for creation of a hostile work environment, citing 42 U.S.C. § 2000e-2(a)(1), § 2000e-2(a)(2), and §2000e-3(a). Plaintiff alleges that, as a result of his complaints of discrimination, he was subjected to a "hostile work environment where it appeared managers were determined to keep plaintiff from promoting." Compl. ¶ 60; see also id. ¶ 115. The City fails to address this claim in its moving papers but, in its reply, asserts that "[t]here are no supporting facts to support Plaintiff's hostile work environment claim." Reply at 4.

To state a claim for violation of Title VII through the creation of a hostile work environment, a plaintiff must allege that (1) he was subjected to verbal or physical conduct based on his race, (2) the conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive so as to alter the conditions of his employment and create an abusive work environment. Galdamez v. Potter, 415 F.3d 1015, 1023 (9th Cir. 2005). A work environment is sufficiently hostile so as to violate Title VII if, in light of "all the circumstances," there exists harassment that is sufficiently severe or pervasive enough to alter the conditions of the victim's employment and create an abusive working environment. See McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1112 (9th Cir. 2004); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986). A plaintiff must show both that the work environment was subjectively and objectively hostile. See Nichols v. Aztec Rest. Enters. Inc., 256 F.3d 864, 871-72 (9th Cir. 2001). In evaluating the objective hostility of a work environment, the factors to be considered include the "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, 510 U.S. 17, 23 (1993).

The Court concludes that plaintiff has failed to state a claim for hostile work environment. Although plaintiff alleges that he was subject to unwelcome conduct based on his race—i.e., denial of promotions and denial of management training opportunities—he has not alleged facts supporting an inference that this conduct altered the conditions of his employment or otherwise created an abusive work environment. Cf. McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1114 (9th Cir. 2004) (finding genuine dispute of material fact as to existence of hostile work environment where plaintiff "was forced to work in dangerous situations and barraged with [race-based] insults and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-03481-CAS(JEMx) | Date | July 6, 2015 |
| Title | RAY LEWIS V. CITY OF LOS ANGELES | | |

abuse"). Indeed, apart from being denied promotions, there are no allegations in the complaint describing what conditions of plaintiff's employment have been altered as a result of the City's allegedly race-based conduct. More to the point, however, plaintiff has not alleged any race-based harassment. Draper v. Coeur Rochester, Inc., 147 F.3d 1104, 1108 (9th Cir. 1998) ("A 'hostile work environment' occurs when there is a pattern of ongoing and persistent harassment severe enough to alter the conditions of employment."). Accordingly, the Court GRANTS without prejudice the City's motion to dismiss plaintiff's claim for creation of a hostile work environment in violation of Title VII.

### 5. Punitive Damages

Lastly, in addition to seeking injunctive relief and compensatory damages, plaintiff requests "[a]ny punitive damages due, as determined by the court." Compl. ¶ 151. The City correctly asserts that punitive damages are unavailable as a matter of law. Section 1981a, which plaintiff relies upon in his complaint, expressly precludes the recovery of punitive damages against "a government, government agency or political subdivision." 42 U.S.C. § 1981a(b)(1). Accordingly, the Court GRANTS the City's motion to dismiss plaintiff's claim for punitive damages.

## V. CONCLUSION

In accordance with the foregoing, the City's motion to dismiss is GRANTED in part and DENIED in part. Specifically, the motion is DENIED as to plaintiff's claims for disparate treatment and retaliation. The motion is GRANTED WITHOUT PREJUDICE as to plaintiff's claims for disparate impact and creation of a hostile work environment.

Insofar as the motion is granted, plaintiff shall have until **Monday, August 3, 2015**, to file a first amended complaint that addresses the deficiencies identified herein.

IT IS SO ORDERED.

| | 00 | : | 01 |
|---|---|---|---|
| | Initials of Preparer | | CMJ |